DAVID N. KELLEY
United States Attorney for the
Southern District of New York
By: Lisa P. Korologos (LPK-2199)
Assistant United States Attorney
One Saint Andrew's Plaza
New York, New York 10007
Tel. (212) 637-2406

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,             :
        Plaintiff,                   :
        - v. -                       :
ALL RIGHT, TITLE AND INTEREST         :
IN REAL PROPERTY AND
APPURTENANCES LOCATED AT TRUMP        :
PARK AVENUE CONDOMINIUM, UNIT 6A      :
502 PARK AVENUE, NEW YORK,
NEW YORK, 10022,                      :
        Defendant-in-rem.            :
------------------------------------x

VERIFIED COMPLAINT

04 Civ. **04 CV 08918**

JUDGE HOWELL

      Plaintiff United States of America, by its attorney, David N. Kelley, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

I. <u>JURISDICTION AND VENUE</u>

      1.   This action is brought pursuant to 18 U.S.C. § 981(a)(1)(A) by the United States of America seeking a judgment forfeiting to the United States:

> ALL RIGHT, TITLE AND INTEREST IN REAL PROPERTY AND APPURTENANCES LOCATED AT TRUMP PARK AVENUE CONDOMINIUM, UNIT 6A, 502 PARK AVENUE, NEW YORK, NEW YORK, 10022 (the "Defendant Property"),

as real property involved in transactions conducted in violation of 18 U.S.C. §§ 1956 and 1957, or any property traceable to such property.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. § 1355 because acts and omissions giving rise to the forfeiture occurred in the Southern District of New York pursuant to 28 U.S.C. § 1395 because the Defendant Property is located in this district.

II. PROBABLE CAUSE FOR FORFEITURE

The Philippines Investigation and Complaint

4. On September 27, 2004, the Philippine Ombudsman Office filed a complaint against Philippine Army Major General Carlos Garcia ("General Garcia") alleging criminal and administrative charges, namely that General Garcia committed perjury and made a false declaration on his Statement of Assets, Liabilities and Net Worth, in violation of Sec. 8, in relation to Sec. 11 of RA 6713; Article 183 of the Revised Penal Code; and Sec. 52A, paragraphs (1) Dishonesty, (3) Grave Misconduct, and (20) Conduct Prejudicial to the Best Interest of the Service under the Civil Service Law. (the "Philippine Complaint").

5. On or about November 9, 2004, an arrest warrant was issued for General Garcia in connection with the charges set forth in the Philippine Complaint. General Garcia is currently

in the custody of the Philippine Armed Forces, awaiting a court martial.

6. The Philippine Complaint details the significant discrepancies in General Garcia's legitimate reported income, in particular the significant wealth/assets that General Garcia and his family have been amassing in the form of deposits in banks, undeclared cash holdings, acquisition of real property, and other personal property, including property in the United States, which are disproportionate to his and his family's legitimate income.

7. According to the Philippine Complaint, General Garcia's primary sources of legitimate income are his salary and the fee/allowances he receives as a Trustee of the Armed Forces of the Philippines Savings and Loan Association ("AFPSLAI"). The Philippine Complaint states the General Garcia's salary for 2001 and 2002 was PHP 170,361.95 ($3,097) and PHP 198,708.47 ($3,612). In 2001, 2002 and 2003, General Garcia received PHP 460,333.34 ($8,369), PHP 767,000.00 ($13,945), and PHP 754,000.00 ($13,709), respectively, from the AFPSLAI.

8. The Philippine Complaint concluded that General Garcia and his family have approximately PHP 47,000,000.000 (approximately $845,000) of undeclared assets in the Philippines, not including the value of their undeclared assets in the United States, which amount to approximately $1,420,000.00.

9. The Philippines authorities are also currently investigating General Garcia and his immediate family for violating the Philippine Republic Act ("RA") 3019, otherwise known as the Anti-Graft and Corrupt Practices Act, as amended, and for violating RA 7080, otherwise known as the Anti-Plunder Act.

The Laundering of the Funds to the United States

10. In 2004 alone, members of General Carlos Garcia's family transferred over $2 million from the Philippines to the United States.

11. On or about January 15, 2004, Clarita Garcia (General Garcia's wife) deposited $308,327.00, approximately $200,000.00 in cash and two certified checks from the Bank of Philippines totaling $108,327.06, into a Citibank account in New York (90337677/730[1]), which she holds jointly with Timothy Garcia (General Garcia's son).

12. In addition, the following wire transfers, totaling over $1 million, were made from the Export and Industry Bank in the Philippines to the United States, in a three month period:

a) On January 21, 2004, $357,418.12 was wire transferred from General Garcia's account in the Philippines to

---

[1] Accounts 90337677 and 90337730 are linked checking and savings accounts, at Citibank, N.A., in New York.

Clarita and Timothy Garcia's Citibank account in New York (#90337677/730);

   b) On February 3, 2004, $265,673.03 was wired from General Garcia's account in the Philippines to Clarita and Timothy Garcia's account in New York (#90337677/730);

   c) On February 20, 2004, $263,809.97 was wire transferred from Merceditas Garcia (General Garcia's sister) in the Philippines to Clarita and Timothy Garcia's account in New York (#90337677/730); and

   d) On March 11, 2004, $176,324.55 was wire transferred from Merceditas Garcia in the Philippines to Clarita and Timothy Garcia's account in New York (#90337677/730).

### The Purchase of the Defendant Property

13.   In or about January 2004, Clarita and Timothy Garcia agreed to purchase the Defendant Property for $765,000.00.

14.  On or about January 16, 2004, Clarita and Timothy Garcia made a down payment of $144,750.00 on the Defendant Property, with funds from their joint account (#90337677/730).

15.   On March 10, 2004, Citibank issued five bank checks for Clarita and Timothy Garcia with funds from their joint account (#90337677/730) to pay the balance of the purchase price of the Defendant Property and various closing costs:

   a) A check for $651,618.99 made payable to Trump Park Avenue LLC, representing the balance of the purchase price

5

of the Defendant Property;

  b) A check for $1,750.00 made payable to Kramer Levin Naftalis & Frankel for legal fees in connection with the purchase and sale of the Defendant Property;

  c) A check for $746.27 made payable to Trump Park Avenue Condominium for payment of the Working Capital;

  d) A check for $730.12 made payable to Trump Park Avenue Condominium for April common charges; and

  e) A check for $17,600.00 made payable to Fidelity National Title Insurance Company.

  16. On or about March 12, 2004, Clarita and Timothy Garcia closed on the purchase of the Defendant Property.

  17. The source of the funds that are being transferred to the United States by General Garcia and his family, and that were used to purchase the Defendant Property, is General Garcia's acceptance of bribes and/or his misappropriation, theft or embezzlement of public funds from the Philippines.

### III. CLAIM FOR FORFEITURE

  18. Incorporated herein are the allegations contained in paragraphs one through seventeen of this Verified Complaint.

  19. Pursuant to 18 U.S.C. § 981(a)(1)(A), "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property," is

6

subject to forfeiture.

   20. 18 U.S.C. § 1956 provides in relevant part that:

> Whoever, transports, transmits or transfers, or attempts to transport, transmit or transfer a monetary instrument or funds . . . to a place in the United States from or through a place outside the United States -
>
> . . .
>
> (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or part to (i) conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity

violates the statute.

   21. 18 U.S.C. § 1956 (c)(7)(B)(iv) provides that "specified unlawful activity" includes:

> with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving -
>
> . . .
>
> (iv) bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official.

   22. 18 U.S.C. § 1957 provides in relevant part that:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than

>           $10,000 and is derived from
>           specified unlawful activity, shall
>           be punished as provided in
>           subsection (b).

23. "Monetary transactions" is defined in 18 U.S.C. § 1957(f)(1) as the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce of funds . . . by, through, or to a financial institution . . . including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title . . . ."

24. "Criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) as "any property constituting, or derived from, proceeds obtained from a criminal offense."

25. "Specified unlawful activity" is defined in 18 U.S.C. § 1957(f)(3) as having the same meaning as that term has in 18 U.S.C. § 1956.

26. By reason of the above, the Defendant Property is subject to forfeiture to the United States of America pursuant to 18 U.S.C. §§ 981 (a)(1)(A), because there is probable cause to believe that the Defendant Property was purchased with funds derived from offenses against the Philippines and constitutes property involved in illegal money laundering transactions in violation of Sections 1956 and 1957 of Title 18, United States Code, and property traceable to such violations.

27. Pursuant to 18 U.S.C. § 985 (c)(1), the first step in initiating a civil forfeiture action against real property is

the filing of a complaint for forfeiture.

WHEREFORE, Plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Property and that all persons having an interest in the Defendant Property be required to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Property to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as it may deem just and proper, together with the costs and disbursements of this action.

Dated:   New York, New York
         November 10, 2004

>                  DAVID N. KELLEY
>                  United States Attorney for the
>                  Southern District of New York
>                  Attorney for the Plaintiff
>                  United States of America
>
> By: _____
>     LISA P. KOROLOGOS (LPK-2199)
>     Assistant United States Attorney
>     One St. Andrew's Plaza
>     New York, New York 10007
>     Tel. (212) 637-2406

9

VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

JOHN BECK, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information on the ground of his belief are official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials, including Philippines officials and representatives, during an investigation of alleged violations of Title 18, United States Code.

                                          JOHN BECK
                                          Special Agent
                                          Department of Homeland Security,
                                          Immigration and Customs Enforcement

Sworn to before me this
10th day of November, 2004

_____
NOTARY PUBLIC

LESLEY B. GLENN
Notary Public, State of New York
No. GL-4654637
Qualified in New York County
Commission Expires 6/30/07

10